## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| In re: | ) | Bky. Case No.:  09-50779 |
| | ) | Chapter 7 |
| DENNIS E. HECKER, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | District Case No.: 09-3645 JRT |
| Cornerstone Bank, | ) | |
| Cornerstone Holding Co, Inc., | ) | |
| Blackstone Financial, LLC, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Randall L. Seaver, Trustee, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

### APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MINNESOTA

### APPELLANT'S BRIEF

Brad A. Sinclair
***SERKLAND LAW FIRM***
State Bar ID No. 0161652
10 Roberts Street
PO Box 6017
Fargo, ND 58108-6017
Telephone (701) 232-8957
Facsimile (701) 237-4049

***ATTORNEYS FOR CORNERSTONE BANK, CORNERSTONE HOLDING CO., INC., AND BLACKSTONE FINANCIAL, LLC***

# TABLE OF CONTENTS

I.      Statement of Issues ........................................................................1

II.     Standard of Review.........................................................................2

III.    Statement of the Case......................................................................3

IV.     Statement of Facts...........................................................................4

V.      Argument .......................................................................................10

        I.  THE BANKRUPTCY COURT ABUSED ITS DISCRETION IN
            APPROVING HE HECKER TRUSTEE'S SALE OF BRAINERD
            IMPORTS, LLC; AND JACOB HOLDINGS OF BAXTER, LLC,
            ASSETS AND SETTLEMENT WITH TOYOTA MOTOR CREDIT
            CORPORATION WHEN THE SETTLEMENT AGREEMENT
            CIRCUMVENTED THE SECURITY INTERESTS OF
            CORNERSTONE BANK.............................................................10

            A.  The Bankruptcy Court abused its discretion in approving
                the alleged sale of Brainerd Imports, LLC; and Jacob Holdings
                of Baxter, LLC, assets and settlement with TMCC because
                the settlement agreement circumvents Cornerstone Bank's
                security interests in general intangibles ................................14

            B.  The Bankruptcy Court abused its discretion in failing to
                grant Cornerstone Bank's request for an evidentiary
                hearing to determine the extent of Cornerstone Bank's
                security interest in the settlement proceeds ...........................20

        II. CORNERSTONE'S APPEAL IS NOT MOOT, AND THE APPEAL
            IS NOT INTERLOCUTORY.......................................................24

            A.  When an appeal in a bankruptcy proceeding involves the
                sale of property, a stay is generally preferable, but when the
                appeal only involves the appellant's interest in the proceeds of
                the sale, a stay is unnecessary, and the appeal is not moot for
                failure to obtain a stay...........................................................25

            B.  Cornerstone's appeal is not an interlocutory appeal because
                the Bankruptcy Court's order was a final order......................29

VI.     Conclusion .....................................................................................32

# TABLE OF AUTHORITIES

## CASES

PAGE NO.

Ashcroft v. Iqbal, 129 S.Ct. 1937 (U.S. 2009)...........................................................29

Bartel v. Bar Harbor Airways, Inc.
    196 B.R. 268, 272 (S.D.N.Y. 1996)..............................................................25

In re 183 Lorraine Street Associates, 198 B.R. 16 (D.N.Y. 1996) ........... 2, 25, 26, 28

In re Decker, 199 B.R. 684, 685 (9th Cir. BAP 1996)........................................ 26, 27

In Re Ebbler Furniture and Appliances, 804 F.2d 87 (7th Cir. 1986). ...................... 14

In re Ellingsen Maclean Oil Co, 98 B.R. 284 (Bankr. Mich. 1989) ......................... 17

In re Forbes, 215 B.R. 183 (8th Cir. BAP 1997) ................................................. 22, 25

In re Grimland, Inc., 243 F.3d 228 (5th Cir. 2001).................................................... 26

In re Momentum Manufacturing Corp., 25 F.3d 1132 (2nd Cir. 1994) ....................... 2

In re National Warranty Ins. Risk Retention Group,
    384 F.3d 959, 962 (8th Cir. 2004) .................................................................. 2

In re Olson, 730 F.2d 1109,(8th Cir. 1984) ........................................................ 30. 31

In re Robert E. Derecktor of Rhode Island, Inc.,
    150 B.R. 296 (Bankr. R.I. 1993).................................................................... 17

In re Saco Local Dev. Corp., 711 F.2d 441, (1st Cir.1983)....................................... 32

In re Seidler, 44 F.3d 945 (11th Cir. 1995)......................................................... 25, 26

In re Tama Beef Packing, Inc., 290 B.R. 90, (8th Cir. BAP 2003) ............................. 2

In re Trism, Inc., 282 B.R. 662, (8th Cir.BAP 2002) .................... 2, 11, 12, 13, 16, 18

In re Yukon Energy Corp., 138 F.3d 1254, 1258 (8th Cir. 1998) .............................. 32

Matter of First Mortgage Atrium Bldg., Ltd.,
    92 B.R. 202, 206 (E.D. Tex. 1988) ................................................................ 26

Matter of Hubka, 64 B.R. 473, (Bkrtc. D. Neb. 1986) ........................................ 20, 21

Matter of Stroud Wholesale, Inc., 47 B.R. 999 (D.C.N.C. 1985) ....................... 27, 28

Matter of Wallace, 102 B.R. 174, (W.D. Mo. 1989) ................................................. 21

Missionary Baptist Foundation of America, Inc., v.
     First National Bank Lubic, Texas, 796 F.2d 752 (5th Cir. 1986) . 14, 15, 16, 18

Nobleman v. American Sav. Bank, 508 U.S. 324, (1993) ......................................... 18

Tringali v. Hathaway Mach. Co., 796 F.2d 553 (1st Cir. 1986) ............................... 30

## STATUTES

Minnesota Statute § 336.8-103 ................................................................................18, 23

Title 11 U.S.C. § 547(c)(5) .......................................................................................14

## MISCELLANEOUS

Am. Jur. Bankruptcy § 3797 ...................................................................................25, 26

16 Fed. Prac. & Proc. Juris. § 3926.2 (2nd ed.) ............................................................30

## I.   STATEMENT OF ISSUES

1.      Did the Bankruptcy court abuse its discretion in approving the Hecker Trustee's sale of Brainerd Imports, LLC; and Jacob Holdings of Baxter, LLC, assets and settlement with Toyota Motor Credit Corporation when the settlement agreement circumvented the security interests of Cornerstone Bank?

2.      Did the Bankruptcy court abuse its discretion in failing to grant Cornerstone Bank's request for an evidentiary hearing to determine the extent of Cornerstone Bank's security interest in the settlement proceeds?

## II.     STANDARD OF REVIEW

A bankruptcy court's decision to approve or disapprove a settlement is within the bankruptcy court's discretion.  In re Trism, Inc., 282 B.R. 662, 666 (8th Cir.BAP 2002). The review of the Bankruptcy court's order approving a settlement agreement is reviewed for an abuse of discretion.  Id.  The bankruptcy court abuses its discretion when its decision is based on an error in the law or a misapplication of the law to the facts.  In re Tama Beef Packing, Inc., 290 B.R. 90, 95 (8th Cir. BAP 2003).  An abuse of discretion further occurs "when a relevant factor that should have been given significant weight is not considered, when an irrelevant or improper factor is considered and given significant weight, or when all proper and no improper factors are considered, but the court in weighing those factors commits a clear error of judgment."  In re National Warranty Ins. Risk Retention Group, 384 F.3d 959, 962 (8th Cir. 2004).  This District Court reviews a Bankruptcy Court's conclusions of law de novo.  In re 183 Lorraine Street Associates, 198 B.R. 16 (D.N.Y. 1996); In re Momentum Manufacturing Corp., 25 F.3d 1132, 1136 (2nd Cir. 1994).

A Bankruptcy court abuses its discretion when it approves a settlement agreement without considering a creditor's security interest. See In re Trism, Inc., 282 B.R. at 666. The Hecker bankruptcy court abused its discretion when the Hecker bankruptcy court approved a settlement agreement circumventing Cornerstone Bank's security interests in general intangibles - the settlement proceeds.  The Hecker Bankruptcy Court abused its discretion in approving the settlement agreement without analyzing whether a legitimate preference action existed.   The Hecker Bankruptcy Court approved the settlement agreement without any evidence as to any preference existing and the extent of the

preference. For the reasons cited herewithin, this Court should reverse the Bankruptcy Court's approval of the settlement agreement circumventing Cornerstone's security interest in the settlement proceeds.

### III.   STATEMENT OF THE CASE

This is an appeal from the <u>Hecker</u> bankruptcy court's decision granting the Trustee's motion for approval of a settlement agreement.  The Trustee, Randall L. Seaver, filed a motion before the bankruptcy court seeking: 1) an approval of a settlement agreement regarding the sale of Dennis Hecker's car dealership personal property and underlying real estate located in Brainerd - Baxter, Minnesota, area; and 2) approval of an alleged preference claim between the Dennis Hecker bankruptcy estate and Toyota Motor Credit Corporation (hereinafter referred to as "TMCC").  (Doc. 1-7, pp. 14-67).  In essence, the funds received from the sale of the car dealership personal property and underlying real estate were the source of funds the Hecker bankruptcy estate received to settle the preference action against TMCC.  (Doc. 1-7, pp. 57-63).  The sale of a car dealership assets was not necessary in order to settle the preference action with TMCC.

Cornerstone Bank filed an objection to the approval of the settlement agreement. Cornerstone Bank did not object to the sale price of the automobile dealership and underlying real estate but objected to the settlement of the alleged preference between the Hecker bankruptcy estate and TMCC.  Cornerstone Bank objected to the alleged of the alleged TMCC preference action because the funds received from the sale of the Hecker dealership assets funded the preference settlement circumventing Cornerstone Bank's security interest in general intangibles – the proceeds received from the sale of the Hecker car dealership.   Cornerstone asserted that Cornerstone's lien in general

intangibles encompassed the settlement proceeds and thus, the settlement proceeds are not property of the Hecker bankruptcy estate.  Cornerstone also requested that the court approve the settlement but conduct an evidentiary hearing at a later date to determine the parties rights and entitlement to the settlement proceeds.  The <u>Hecker</u> bankruptcy court denied Cornerstone an evidentiary hearing to determine the extent and priority of Cornerstone's lien in the settlement proceeds and approved the Trustee's sale of Hecker assets and the utilization of the settlement proceeds to fund the Trustee's preference claim against TMCC.  The Hecker car dealership sale was a Toyota car dealership in which Toyota financed the new and used car inventory.  This appeal follows.

### IV.    STATEMENT OF FACTS

1.    Hecker filed for Chapter 7 bankruptcy relief on June 4, 2009.

2.    Randall Seaver was appointed the Bankruptcy Trustee for the Hecker bankruptcy estate.

3.    During the bankruptcy proceedings, Cornerstone Bank has filed a motion for relief from stay to enforce its security interests in general intangibles of Dennis Hecker.  (Doc. 1-9, p. 7, entry 74).

4.    The <u>Hecker</u> bankruptcy court granted Cornerstone Bank's motion for relief from stay.  (Doc. 1-9, p. 14, entry 194).  The <u>Hecker</u> bankruptcy court and the bankruptcy trustee recognized that Cornerstone has a valid security interest in Denny Hecker's general intangibles.

5.    That pursuant to case law, a security interest in general intangible extends to all property owned by the debtor that is not inventory, equipment, motor vehicles, and accounts.

6.   General intangibles extends to all monies that debtor receives from the sale of the Debtor's corporate assets and from the sale of corporate stock.

7.   On or about November 20, 2009, the Trustee filed the motion for approval of settlement agreement and expedited hearing.  (Doc. 1-9, p. 21 entry 315).

8.   Cornerstone Bank had four (4) business days to object to the Trustee's motion for approval of a settlement agreement.  (Doc. 1-9, p. 21 entry 317).

9.   The Trustee motioned the court for an order authorizing the sale of Dennis Hecker's corporation, Brainerd Imports, LLC, to a third party.

10.   Brainerd Imports, LLC is a Toyota automobile dealership located in the Brainerd/Baxter, Minnesota, area.

11.   The Trustee also motioned the court for the sale of Dennis Hecker's corporate entity known as Jacob Holdings of Baxter, LLC.

12.   Jacob Holdings of Baxter, LLC is a corporate entity that owned the underlying automobile dealership real estate occupied by Hecker's corporation, Brainerd Imports, LLC.

13.   The Trustee also sought to settle an alleged preference between Dennis Hecker and TMCC.

14.   The Trustee was selling the car dealership and underlying real estate and settling an alleged preference claim against TMCC for $430,000.00.

15.   Cornerstone filed a timely objection.

16. Cornerstone did not object to the sale price of the Hecker assets, Brainerd Imports, LLC and Jacob Holdings of Baxter, LLC, but objected to Trustee's asserting that all sale proceeds, $430.000.00, was property of the bankruptcy estate free and clear of any liens or encumbrances of Cornerstone Bank.

17. The Trustee fashioned the sale so the proceeds received from the Hecker dealership assets funded TMCC's alleged preference.

18. Cornerstone objected to the Trustee's fashioning the sale of the Hecker automobile dealership assets as a settlement of a preference claim with TMCC asserting that the sale settlement was fashioned to circumvent Cornerstone Bank's security interest in general intangibles – the sale proceeds - and Cornerstone requested an evidentiary hearing to determine the extent of Cornerstone's interest in the settlement proceeds.

19. The Trustee presented no evidence as to any alleged preference between Dennis Hecker and TMCC.

20. The Dennis Hecker corporate entities the Trustee sought approval to sell were non-bankruptcy entities.

21. Cornerstone asserted that the extent of its security interest in the proceeds of the sale could not be determined without an evidentiary hearing.  Id. Cornerstone further argued that the entities to which the Trustee sought to sell the assets were not bankruptcy filing entities, and therefore the preference statutes did not apply to the non-bankruptcy filing entities. (Transcript of proceedings,    November 25, 2009 at P.20.)

22.     Despite Cornerstone's request for an evidentiary hearing, the bankruptcy court immediately authorized the Trustee to execute and deliver the necessary documents to effectuate the transactions under the settlement agreement.

23.     The Trustee's motion failed to provide the court and creditors with relevant information regarding the elements of the alleged TMCC preference including:

   A.     The total amount of the debtor's and the debtor's related corporations obligation outstanding to TMCC ninety days prior to the debtor's filing for bankruptcy relief;

   B.     The value of TMCC's collateral and a description of the collateral ninety days prior to the debtor's filing for bankruptcy relief;

   C.     The payments the debtor, as a guarantor, tendered to TMCC during the ninety days preference period;

   D.     The payments the debtor's entities, Brainerd Imports, LLC, and Jacob Holdings of Baxter, LLC, tendered during the ninety day preference period to TMCC;

   E.     The total amount of the debtor's and the debtor's related corporations obligation outstanding to TMCC at the time of the debtors filing for bankruptcy relief;

   F.     The value of TMCC collateral at the time of the debtors filing for bankruptcy relief; and

   G.     The valuation of the debtor's membership certificates in Brainerd Imports, LLC, and Jacob Holdings of Baxter, LLC, and whether those membership interests are uncertificated, certificated, and whether those membership interests were subject to transferability and/or granting a security interest in the same to any party including TMCC.

24.     Prior to the Trustee's alleged settlement with TMCC, the estate lacked sufficient proceeds to pay the Trustee's legal counsel for fees outstanding.

25.    The closing document demonstrate that funds from the sale of the Brainerd Imports, LLC, and Jacob Holdings of Baxter, LLC, assets, the sum of $425,000.00 was tendered directly to the Trustee as settlement proceeds.  No funds were tendered directly from TMCC.  (Doc. 1-7, pp. 57-63).

26.    The Trustee's fashioning the sale of the assets as a settlement with TMCC of a preference claim was an attempt by the trustee to circumvent Cornerstone Bank's security interest in general intangibles.  Pursuant to case law, all funds the Hecker bankruptcy estate receives from the sale of Denny Hecker's interest in various corporations are subject to Cornerstone Bank's security interest in general intangibles.  The only way for the Trustee to circumvent Cornerstone Bank's security interest in general intangibles is to fashion the sale of the assets as a settlement of a preference with TMCC.

27.    The Trustee fashioned the sale of the Hecker automobile dealership assets as a settlement in the entirety of a preference claim against TMCC for the full $430,000.00 received.  The Trustee did not allocate any proceeds received from the sale of the car dealership and underlying real estate as proceeds from the sale of Hecker's corporate interests.

28.    Trustee acknowledged pursuant to the Settlement Agreement with TMCC that the Debtor in September, 2009, entered into a proposed sale of the same assets in which the bankruptcy estate was to receive $300,000.00.  (Doc. 1-7, pp. 51-67).  A hearing regarding the Debtor's sale of the

identical assets to the identical parties that the Trustee sold the assets to was heard before the Court on October 28, 2009.  The Court denied the Debtor's motion.  (Doc. 1-9, pp. 18-19, entries 260, 272, 274).  The Court denied the Debtor's motion in part because the Debtor was to receive $1 million personally as a personal service contract from the sale.  <u>Id</u>.

29.     The Debtor's sale of the identical assets in which the bankruptcy estate was to receive $300,000.00 also reserved for the Hecker bankruptcy estate, the Hecker bankruptcy estate's right to commence a preference action against TMCC.

30.     Upon the Court's rejection of the Debtor's attempt to sell the identical assets, the Trustee entered into an agreement to sell the identical assets to the identical parties but this time receive $430,000.00   including the satisfaction of the alleged preference claim between the Hecker bankruptcy estate and TMCC.  (Doc. 1-7, pp. 14-63).  The Trustee's settlement documents with TMCC asserts that the preference action may have a value of up to $205,000.00.  See Doc. 1-7, pp. 51-52.  The Bankruptcy Court indicated that the Trustee's receiving $225,000.00 in excess of any alleged preference with TMCC demonstrated an excellent job on the part of the Trustee in negotiating resolution.  (Transcript p. 4). The <u>Hecker</u> Court failed to consider Cornerstone Bank's costs that the settlement was an attempt to circumvent Cornerstone Bank's security interest in general intangibles – Cornerstone Bank's security interest in non-preference settlement proceeds/sale of business assets.

31.     Cornerstone Bank's objection to the settlement asserted that the Trustee failed to provide the information necessary for informed creditors to make a decision whether to accept or reject the Trustee's settlement of the alleged TMCC preference.  No evidence was presented as to the debtor Dennis Hecker tendering payments to TMCC within the ninety days of Dennis Hecker's bankruptcy filing - the only payments that could be considered a preference.  The non-debtors payments to TMCC do not constitute a preference.

32.     For the reasons cited here within, this court should reverse the bankruptcy court's order of November 25, 2009, and decree that an evidentiary hearing must be conducted to determine the extent of Cornerstone Bank's security interest in the sale proceeds the Trustee received from the sale of the debtors interest in Brainerd Imports, LLC and Jacob Holdings of Baxter, LLC.

## V.     ARGUMENT

I.     **THE BANKRUPTCY COURT ABUSED ITS DISCRETION IN APPROVING THE HECKER TRUSTEE'S SALE OF BRAINERD IMPORTS, LLC; AND JACOB HOLDINGS OF BAXTER, LLC, ASSETS AND SETTLEMENT WITH TOYOTA MOTOR CREDIT CORPORATION WHEN THE SETTLEMENT AGREEMENT CIRCUMVENTED THE SECURITY INTERESTS OF CORNERSTONE BANK.**

There are four factors that a court must weigh to determine whether a settlement is reasonable: (1) the likelihood of success in the litigation; (2) the difficulties, if any, in collection matters; (3) the complexity of the litigation and the attendant expense, inconvenience, and delay; and (4) the paramount interest of the creditors and a proper

deference to their reasonable views. In re Trism, Inc., 282 B.R.662, 666 (8th Cir. BAP 2002).

In Trism, the Bankruptcy Appellate Panel stated that a bankruptcy court must give deference to the reasoned opinion of creditors when considering a proposed settlement. Id. at 667-68. The Court in Trism stated that the bankruptcy court must evaluate all factors in making its decision regarding a settlement. Id. at 668.

The Hecker bankruptcy court failed to abide by the Trism court dicta by approving the Trustee's request for the sale of the Hecker Brainerd Imports, LLC and Jacob Holdings of Baxter, LLC assets to a third party and settlement of an alleged preference with TMCC, in which the entire asset sale proceeds funded the TMCC preference claim with no sale proceeds being paid to the bankruptcy estate. If the settlement was in fact a true preference settlement, the Trustee need not sell Brainerd Imports, LLC and Jacob Holdings of Baxter, LLC assets to the same third parties the Debtor sought to transfer the assets to in order to settle the TMCC preference action. In a previous motion the debtor filed with the bankruptcy court in October, 2009, the Trustee was to receive $300,000.00 from the debtors attempt to sell Brainerd Imports, LLC and Jacob Holdings of Baxter, LLC to a third party while still preserving for the Hecker bankruptcy estate the alleged preference action against TMCC. The Hecker court denied the Debtor's motion to sell the car dealership assets in which the bankruptcy estate would receive $300,000.00 and still have a valid claim to assert at a later date against TMCC. (Doc. 1-9, p. 19, entry 260). The court denied the Debtor's motion since the Debtor was to receive funds from the sale. The Trustee sold Brainerd Imports, LLC, and Jacob Holdings of Baxter, LLC, to the same parties the Debtor sought to sell the assets.

In <u>Trism</u>, the issue on appeal was whether the bankruptcy court erred in approving a compromise despite objections by the Unsecured Creditors Committee.  The unsecured Creditors Committee objected in part to the settlement agreements since the settlement agreement settled the alleged liens of a secured party.  The court approved the settlement agreement but disapproved the portion of the settlement agreement that restricted the Unsecured Creditors Committee's ability to object to the allowance, extent, and priority of the secured creditor's alleged liens.  The secured creditor then appealed.  The <u>Trism</u> court recognized that the bankruptcy court failed to address four factors in determining the reasonableness of the settlement:

1.    The likelihood of success in a litigation;
2.    The difficulties, of any, in collection matters;
3.    The complexity of the litigation and litigation expanse, inconvenience, and delay; and
4.    The paramount interest of the creditors and a proper deference to the reasonable views.

The <u>Trism</u> court ordered that a bankruptcy court has to determine and weigh all four factors and then must either approve or refuse the proposed settlement.  The <u>Trism</u> court found that an abuse of discretion occurs when the court does not determine and weigh the four settlement factors and either approves or rejects the proposed settlement. The <u>Trism</u> court mandated that a bankruptcy courts role in evaluating a motion to approve a settlement agreement is limited to determining whether the proposed settlement is reasonable under the circumstances after review of the four relevant factors. The <u>Trism</u> court further ordered that a bankruptcy court, when considering contested motions, <u>must determine the facts relevant to the legal inquiry, consider the motion and any objections, and must rule on the objections, either sustaining them, in which case the motion must be denied, or overruling the objections, in which case the motion can be</u>

granted.    Since the <u>Trism</u> court did not evaluate all four factors, the <u>Trism</u> court's decision was reversed on appeal.

In the present cause of action, the <u>Hecker</u> bankruptcy court did not evaluate any of the four factors and the <u>Hecker</u> bankruptcy court's decision of November 25, 2009, should be reversed.  Most importantly, the <u>Hecker</u> bankruptcy court did not evaluate the fourth factor to determine whether Cornerstone had a paramount interest.  <u>Id.</u>  The bankruptcy court and the Trustee previously recognized Cornerstone Bank's valid security interest in Denny Hecker's general intangibles, and that such security interest extends to the proceeds received from the sale of Denny Hecker's corporate interests. The <u>Hecker</u> bankruptcy court did not give proper deference to Cornerstone's paramount interest and its objections.  <u>See</u> <u>Id.</u>

In order to properly determine the issues relating to Cornerstone's security interest in the proceeds the Trustee received from the sale of Hecker's interest in Brainerd Imports and Jacob Holdings, the <u>Hecker</u> bankruptcy court needed to hold an evidentiary hearing.  Because the bankruptcy court failed to consider the four <u>Trism</u> factors and failed to hold an evidentiary hearing regarding Cornerstone's paramount security interest in all proceeds received from the sale of Denny Hecker's corporate entities, the bankruptcy court abused its discretion in approving the settlement agreement.  Moreover, from this district court's de novo review of the bankruptcy court's application of the law, the <u>Hecker</u> bankruptcy court failed to properly apply the law to this case by failing to consider the <u>Trism</u> factors and failing to conduct an evidentiary hearing to determine the extent of Cornerstone Bank's security interest in the settlement proceeds.  The <u>Hecker</u> bankruptcy court's November 25, 2009, approval to the settlement agreement should be

reversed and remanded for further proceedings to determine Cornerstone Bank's interest

in the settlement proceeds the Trustee received and the Trustee's attempt to circumvent

Cornerstone Bank's security interest in the same.

>   **A.    The bankruptcy court abused its discretion in approving the alleged sale of Brainerd Imports, LLC; and Jacob Holdings of Baxter, LLC, assets and settlement with TMCC because the settlement agreement circumvents Cornerstone Bank's security interests in general intangibles.**

Case law provides that if TMCC is fully secured ninety days before the filing of

the Denny Hecker's bankruptcy petition, TMCC can never be subject to a preference

action.  See In Re Ebbler Furniture and Appliances, 804 F.2d 87 (7th Cir. 1986).  In the

case of Missionary Baptist Foundation of America, Inc., v. First National Bank Lubic,

Texas, 796 F.2d 752 (5th Cir. 1986), the issue before the court was  whether the loan

payments tendered to the secured creditor holding a valid security interest in accounts

receivable of the Debtor received during the ninety days prior to the Debtor's filing for

bankruptcy relief amounted to a voidable preference.  The secured creditor asserted that

under Title 11 U.C.C. § 547(c)(5), which invokes what is known as the "improvement in

position exception", that the secured creditor was fully secured at all times and therefore,

the Debtor's payments to the Debtor's lines of credit did not result in any improvement

of the secured creditor's lien position.  The court recognized that preference law exempt

fully secured creditors from its grasps.  The Missionary court also recognized under Title

11 U.C.C. § 547(c)(5) a perfected security interest in inventory and receivables is subject

to a two point net improvement test under § 547(c)(5) which requires the compilation of:

>   1. Loan balance outstanding ninety days prior to the bankruptcy;

2. The market value of the accounts receivable and inventory ninety days prior to the debtors filing for bankruptcy relief;
3. The new loan balance outstanding on the day of the bankruptcy petition was filed; and
4. The value of the accounts receivable and inventory on the day of bankruptcy filing.

The court observed that a creditor with a security interest in a "floating mass" such as inventory and/or accounts receivable is subject to preference attacks to the extent the creditor improves its position during the ninety day period before the bankruptcy filing. The Missionary court recognized the "two point improvement test" requires the determination of the secured creditor's position ninety days before the petition and at the time of the petition. No preference occurs unless the loan is under-collateralized ninety days prior to the bankruptcy filing.

The Hecker Bankruptcy Trustee never demonstrated in his moving papers nor in oral argument before the bankruptcy court that TMCC was undersecured or that a preference occurred. The Hecker Trustee never provided the court nor creditors with any information to satisfy the Missionary court two point improvement test. The Trustee never informed the bankruptcy court nor creditors as to the alleged payments made by the debtor, Dennis Hecker, to TMCC. The Trustee never provided the bankruptcy court with any information regarding the extent of the alleged preference made by Dennis Hecker. The only rational for the Trustee to bundle a sale of assets free and clear of liens and encumbrances along with a settlement of a preference claim with TMCC was to have the sale of assets fund the preference claim. The Debtor previously sought approval on his own of the sale of the same assets to the same parties the Trustee ultimately sold the assets with the estate receiving $300,000.00 and the estate preserving its preference claim

against TMCC.   Neither the Trustee or TMCC objected to the Debtor's proposed settlement and the preservation of the preference claim.  (Doc. 1-9, pp. 18-19, entries 260-274).   The Trustee's bundling of the sale of assets free and clear of liens and encumbrances along with the settlement of a preference claim and alleging that all of the proceeds received from the bundling of the car dealership assets and settlement of the preference claim were related solely to a preference claim against TMCC was for no other purposes other than to circumvent the security interest of Cornerstone Bank and provide the estate with funds to pay the Trustee's legal counsel.  The evidence is clear that the bankruptcy court and the Trustee failed to satisfy the requirements necessary to demonstrate that an actual preference occurred.  The evidence clearly demonstrates the Trustee's intentions to circumvent Cornerstone Bank's interest in general intangibles - all proceeds received from the sale of Dennis Hecker corporate interests.

The evidence demonstrates that the bankruptcy court abused its discretion in approving the settlement agreement and approving the settlement without holding an evidentiary hearing to determine the extent of Cornerstone Bank's liens attachment to the settlement proceeds.

The bankruptcy court's misapplication of the law in this case is subject to de novo review.  The bankruptcy court's failure to analyze the <u>Trism</u> and <u>Missionary</u> factors and determine the preference elements including:  1)  amount of indebtedness and value of collateral ninety days prior to the bankruptcy filing; 2)  at the time of the bankruptcy filing; and 3)  determine the funds that the Debtor, Dennis Hecker, personally actually tendered to the TMCC and not the funds that Dennis Hecker's corporate entities tendered,

non-bankruptcy entities, is a misapplication of the law subject to this district court's de novo review.

In the case of <u>In re Ellingsen Maclean Oil Co,</u> 98 B.R. 284 (Bankr. Mich. 1989), debtor's interest in a corporate investment was liquidated and the debtor received approximately $84,000.00 from the liquidation proceeds. A bank having a security interest in the debtor's contract rights and general intangibles asserted a superior interest in the $84,000.00 liquidation proceeds. The <u>Ellingsen</u> court found that proceeds received from the Trustee's sale of the debtors interest in the partnership were subject to the bank's security interest in the debtor's general intangibles.   The <u>Ellingsen</u> court recognized that a partner's interest in the partnership and the partner's share of the profits and surplus from the partnership is personal property. The <u>Ellingsen</u> court held that a security interest in general intangibles extends to all personal property of the Debtor other than goods, accounts, chattel paper, documents, instruments and cash. The <u>Ellingsen</u> court noted that contract for the sale of real property is personal property that falls within the definition of general intangibles.

In the case of <u>In re Robert E. Derecktor of Rhode Island, Inc.,</u> 150 B.R. 296 (Bankr. R.I. 1993), the court found that a bank's security interest in the debtor's general intangibles was broad enough to include the debtor's interest in settlement proceeds. The <u>Derecktor</u> unsecured creditor's committee argued that a secured creditor's lien in general intangibles did not extend to settlement proceeds. The <u>Derecktor</u> court disagreed. The <u>Derecktor</u> court recognized that general intangibles includes any personal property including things in action other than goods, accounts, chattel paper, documents, instruments and money. The <u>Derecktor</u> court held that the debtor's interest in the

settlement proceeds was a chose in action to which the secured creditor's security interest attached.

State law controls the validity and effect of a security interest in a bankruptcy setting.  Nobleman v. American Sav. Bank, 508 U.S. 324, 330 (1993).   Minnesota Statutes § 336.8-103 provides that an interest in a partnership or limited liability company (LLC) is a general intangible and is not a security or financial asset unless it is traded in a securities exchange or securities market or is held in a securities account.  There is no evidence that Denny Hecker's ownership interests in Brainerd Imports, LLC, and Jacob Holdings of Baxter, LLC, were traded in a securities exchange or securities market or was held in a securities account.

At the November 25, 2009, Hecker bankruptcy court hearing, Cornerstone Bank asserted that it had a superior interest in the sale proceeds/settlement proceeds, the sum of $425,000.00.  Cornerstone objected to the Trustees classifying the settlement entered into between the Trustee and the acquiring parties of the assets of Brainerd Imports, LLC and Jacob Holdings of Baxter, LLC as a settlement of a preference action with TMCC. The agreement was a sale of assets free and clear of liens and encumbrances.  The Trustee was simply consummating the Debtor's previous attempt to sell the assets of Brainerd Imports and Jacob Holdings to the same entities as before for the sum of $300,000.00 and settle A potential preference claim against TMCC for $125,000.00.  The Trustee masked the entire settlement as a preference action with TMCC for $425,000.00 to circumvent the interest of Cornerstone and the settlement proceeds.  The Hecker bankruptcy court erred by failing to investigate the Missionary factor, and apply the Trism data and grant an evidentiary hearing to determine the extent of the Cornerstone's lien in the settlement

proceeds.  The evidence is clear from the debtor's previously filed motion with the court to sell the Brainerd Imports and Jacob Holdings of Baxter assets that the car dealership assets had a value of at least $300,000.00 to the Hecker estate.  The Trustee's Settlement Agreement with TMCC asserted that the maximum amount of any preference was $206,000.00.  (Doc. 1-7, pp. 51-52).  The evidence demonstrates that Cornerstone Bank is entitled to at least $224,000.00 of the settlement proceeds and that the maximum amount of the alleged TMCC preference can only be $206,000.00.  (Doc. 1-7, pp. 51-52).

The Trustee subsequently renegotiated sale of the assets of Brainerd Imports, LLC and Jacob Holdings of Baxter, LLC, assets to the same parties that the Debtor attempted to sell the assets and settlement of the alleged preference claim of TMCC for $425,000.00 demonstrate that the preference claim was worth $125,000.00 despite no evidence existed as to value of the claim.  The evidence is clear that Cornerstone Bank's interests in the settlement proceeds is at least $220,000.00 to $300,000.00.  The Trustee's comingling the sale of Brainerd Imports, LLC and Jacob Holdings of Baxter, LLC, assets with a settlement of an alleged preference with TMCC was in order to maximize proceeds payable to the estate in contravention of the security interest/lien of Cornerstone Bank. The Trustee failed to provide evidence whatsoever as to the alleged amount of the TMCC preference.  There is no evidence as to the alleged payments tendered by Dennis Hecker, the debtor, to TMCC within ninety days of the bankruptcy filing.  There is no evidence as to the value of TMCC's lien ninety days prior to the bankruptcy filing and the amount of the indebtedness ninety days prior to the bankruptcy filing; the value of the lien at the time of the bankruptcy filing; and the amount of the indebtedness at the time of the bankruptcy filing.  The sale of the Brainerd Imports, LLC and Jacob Holdings of Baxter,

LLC assets to a third party was not necessary in order to settle the alleged preference action with TMCC. The Trustee's action were simply an attempt to consummate the Debtor's previously arranged sale of the Brainerd Imports and Jacob Holdings of Baxter assets for $300,000.00 and settle the alleged preference action with TMCC for $125,000.00 and to circumvent the lien of Cornerstone Bank in its entirety for the total of settlement proceeds of $425,000.00.

Cornerstone Bank did not object to Trustee selling the assets of Brainerd Imports, LLC and Jacobs Holding of Baxter, LLC for $425,000.00. Cornerstone objected to the Trustee disguising the sale of the assets of Brainerd Imports, LLC, and Jacob Holdings of Baxter, LLC, as a settlement of a preference action with TMCC.

For the reasons stated here within, Cornerstone respectfully requests this district court to reverse the <u>Hecker</u> bankruptcy court's decision of November 25, 2009, that all of the proceeds from the sale of the Hecker car dealership assets was a settlement of a preference claim against TMCC. No evidence of the claim and the amount of the preference was presented to the Court.

**B. <u>The bankruptcy court abused its discretion in failing to grant Cornerstone Bank's request for an evidentiary hearing to determine the extent of Cornerstone Bank's security interest in the settlement proceeds</u>.**

Evidentiary hearings are necessary when there are factual issues relating to a creditor's security interest. <u>Matter of Hubka</u>, 64 B.R. 473, 474 (Bkrtc. D. Neb. 1986). In <u>Hubka</u>, the debtor filed an objection to the creditor's secured claim. <u>Id</u>. In <u>Hubka</u>, the court held that an evidentiary hearing was necessary since the court could not determine the factual matter without more evidence. The court held that if a factual dispute exists,

the matter must be set for further evidentiary hearing at later date.  In <u>Hubka</u>, the debtor filed an objection to the proof of claim of a secured creditor.  The court held that part of the objection could be ruled upon as a matter of law and a part of the objection must be set for further evidentiary hearing since the objection concerned a resolution of factual issues.  The same result was reached in the case of <u>Matter of Wallace</u>, 102 B.R. 174, 174 (W.D. Mo. 1989).

In <u>Wallace</u>, the appellant argued that it had a perfected lien in the debtor's settlement and that the lien gave the appellant a right to a share of the settlement proceeds. The bankruptcy court refused to conduct an evidentiary hearing to determine whether: (1) the appellant's lien was valid; (2) if the lien was valid, if it was necessary for the appellant to file a proof of claim with the bankruptcy court to obtain payment or if the appellant had an absolute right to the funds; and (3) if the appellant did have a valid lien and it was necessary to file a claim with the bankruptcy court, if any of the documents the appellant filed adequately preserved its lien thereby entitling the appellant to immediate payment.  <u>Id.</u>  Since the bankruptcy court failed to hold an evidentiary hearing to resolve the factual issues relating to the appellant's lien, the District Court remanded the case for an evidentiary hearing for supplemental findings of fact and conclusions of law.  <u>Id.</u>

Pursuant to <u>Wallace</u> and <u>Hubka</u> decisions, an evidentiary hearing is necessary to determine whether Cornerstone Bank's security interest in general intangibles extended to the proceeds the Trustee received from the sale of the Brainerd Imports, LLC and Jacob Holdings of Baxter, LLC assets.  Additionally, an evidentiary hearing is necessary to determine the extent of the TMCC's preference.  Attached to the Trustee's motion for approval of settlement agreement, the Trustee filed with the court an asset purchase

agreement between Brainerd Imports, LLC and the third party, Brainerd T, LLC; (Doc. 1-7, pp. 14-31), a real estate purchase agreement between Jacob Holdings of Baxter, LLC and Walzer Real Estate IV, LLC; (Doc. 1-7, pp. 32-50), and a settlement agreement between the Trustee, Brainerd Imports, LLC, Jacob Holdings of Baxter, LLC, and TMCC. (Doc 1-7, pp. 51-67). The documents demonstrate that the buyer of Brainerd Imports, LLC, Brainerd T LLC was to tender at closing $1,675,000.00 of which a sum in excess of $1,000,000.00 would be utilized to purchase existing new vehicles, the sum in excess of $264,000.00 to purchase existing used vehicles, the sum in excess of $60,000.00 to purchase existing parts, and a sum in the amount of $250,000.00 to purchase fixed assets. $425,000.00 of the sale proceeds were tendered to the Trustee. See closing statement attached to the Trustee's motion for approval of settlement agreement, Exhibit 4.

Exhibit 3, of the settlement agreement the Trustee entered into with TMCC provides that the Debtor, Dennis Hecker, previously sought court approval of the sale of the assets to the identical parties on or about September 14, 2009. The agreement further provides that on or about October 28, 2009, the bankruptcy court denied Denny Hecker's motion for approval of the asset sale. The settlement agreement further provides that the Trustee subsequently negotiated terms of a new purchase agreement with the same parties. The agreement provides that TMCC would not stipulate to the sale. The settlement agreement provides that the loan payments that debtor may have made to TMCC may have been $206,000.00. No supporting documents were attached to the Trustee's motion. The settlement documents indicate the alleged maximum amount of

the preference claim could not exceed $205,000.00.  It was incomprehensible that TMCC would settle a preference claim for $220,000.00 more than the value of the claim.

The Trustee provided no evidence at the hearing nor in the Trustee's motion for approval of settlement agreement:

1.      Dennis Hecker had any liability to TMCC;

2.      Dennis Hecker personally tendered payments to TMCC within the preference period (90 days prior to Dennis Hecker filing for bankruptcy relief;

3.      TMCC was under secured during the preference period;

4.      The amount of the TMCC indebtedness ninety days prior to the bankruptcy filings;

5.      The value of TMCC's collateral ninety days prior to the bankruptcy filing;

6.      The amount of the indebtedness outstanding to TMCC as of the time of the bankruptcy filing; and

7.      The value of the TMCC's collateral at the time of the bankruptcy filing.

The Trustee's motion asserts that the debtor tendered $206,000.00 of preference payments to TMCC.  The Trustee did not attach any document verifying the Trustee's assertions.  If the settlement proceeds are not in fact settlement of a preference, the settlement proceeds are subject to Cornerstone's security interests in Dennis Hecker's general intangibles-proceeds received from the sale of Dennis Hecker's interest in various corporations-LLC's.  Pursuant to Minnesota Statutes § 336.8-103, the proceeds received from the sale of an interest in a limited liability company is a general intangible.

The bankruptcy court did not address these issues in its oral or written orders.  <u>See</u> (Tr. 11/25/09, at pp. 37-40); (Order approving settlement 11/25/09).

An evidentiary hearing is necessary since Cornerstone has an interest in general intangibles which extends to the sale proceeds.  The Trustee has failed to demonstrate the elements necessary to establish a preference action against TMCC.  Insufficient evidence exists to demonstrate that the Trustee's alleged settlement with TMCC was in fact a preference and not disguised as a sale of Dennis Hecker's interest in Brainerd Imports, LLC and Jacob Holdings of Baxter, LLC.  Accordingly, the bankruptcy court abused its discretion in failing to grant an evidentiary hearing.  This District Court should remand this case to the bankruptcy court for an evidentiary hearing on the matters relating to Cornerstone's security interest in the proceeds of the sale and Trustee's proof of the existence of a preference and the extent of the preference.

## II.    <u>CORNERSTONE'S APPEAL IS NOT MOOT, AND THE APPEAL IS NOT INTERLOCUTORY</u>.

The Trustee may contend that Cornerstone's appeal is Moot because Cornerstone did not obtain a stay of the sale, and the Trustee may assert that the sale of assets to a third party has closed.  The Trustee ignores the fact that Cornerstone never objected to the sale of the assets, but objected to the Court determining without an evidentiary hearing that Cornerstone had no interest in the settlement proceeds.  Cornerstone Bank specifically stated that it did not object to the Trustee selling the assets of Brainerd Imports, LLC, and Jacobs Holding of Baxter, LLC, for $425,000.00.  Cornerstone did not object to the actual sale or the sale price.  Cornerstone simply objected to the court determining that the sale proceeds were free and clear of Cornerstone's liens without evidence and/or an evidentiary hearing.  Cornerstone asserted that it had a valid security

interest in the proceeds the Trustee received and that a determination should be made as to the extent of Cornerstone's interest in the settlement proceeds.

> ### A.   When an appeal in a bankruptcy proceeding involves the sale of property, a stay is generally preferable, but when the appeal only involves the appellant's interest in the proceeds of the sale, a stay is unnecessary, and the appeal is not moot for failure to obtain a stay.

In the bankruptcy context, mootness is an issue that "involves equitable considerations as well as the requirement of Article III of the Constitution that there be a live case or controversy."   Bartel v. Bar Harbor Airways, Inc., 196 B.R. 268, 272 (S.D.N.Y. 1996).   The existence of a live case or controversy is a prerequisite to jurisdiction in the federal courts.   In re Forbes, 215 B.R. 183, 187 (8th Cir. BAP 1997). An appeal is moot when events have taken place during the pendency of the appeal that renders it impossible for the court to grant any relief.   Id.

The Trustee may assert that Cornerstone's failure to obtain a stay pending appeal renders this appeal moot because the sale of assets in this case has been consummated. While it is true that under certain circumstances it may be necessary to obtain a stay pending appeal to prevent the appeal from being moot, the failure to obtain a stay pending an appeal does not automatically render the appeal moot.   In re Seidler, 44 F.3d 945, 948 (11th Cir. 1995); see also Matter of 183 Lorraine Street Associates, 198 B.R 16, 25 (E.D.N.Y. 1996) (citing cases from the 5th Circuit, 6th Circuit, 7th Circuit, 11th Circuit, 9th Circuit, and the D.C. Circuit for the proposition that the failure to obtain a stay pending an appeal does not render the appeal moot).   For example, when a sale has taken place and distributions have been made, an appeal is nonetheless permissible despite the failure to obtain a stay.   Am. Jur. Bankruptcy § 3794.   Even though distributions have

been made, effective relief is possible by requiring inappropriately distributed funds to be repaid.  Id.

In <u>In re Decker</u>, 199 B.R. 684, 685 (9th Cir. BAP 1996), the Debtor filed a motion requesting the bankruptcy court to approve the sale of real estate, and to pay a portion of the sale proceeds to a secured creditor.  The IRS objected to the motion, contending that it had a senior lien against the property.  <u>Id.</u>  The bankruptcy court authorized the sale and the payment of the proceeds to the creditor, and the IRS appealed.  <u>Id.</u>  On appeal, the secured creditor contended that the appeal was moot because the property had been sold, and the IRS failed to seek a stay pending appeal.  <u>Id.</u> at 687.  The <u>Decker</u> court held that the appeal was not moot.  The <u>Decker</u> court held that since the IRS did not seek to void the sale it only sought a determination as to who was entitled to the sale proceeds, the appeal was not moot by the IRS not obtaining a stay of the sale.  The <u>Decker</u> court further found:

> Where the order appealed involves the distribution of funds and the party who received the funds is a party to the appeal, the appeal is not moot because the appellate court has the power to fashion effective relief.  In the event of an adverse decision on appeal, [the creditor] could be required to repay the funds.

<u>Id.</u>; <u>see also</u> <u>In re Grimland, Inc.</u>, 243 F.3d 228 (5th Cir. 2001) (stating that that issues relating to a surcharge were not moot because the creditor who obtained a surcharge would merely have to repay the creditor whose collateral had been surcharged); <u>In re Seidler</u>, 44 F.3d at 948  (indicating that the appeal was not moot because if the creditor was successful on the merits, the creditor would have been able to then enforce a lien against the property); <u>Matter of First Mortgage Atrium Bldg., Ltd.</u>, 92 B.R. 202, 206 (E.D. Tex. 1988) (providing that an appeal is not moot even if the debtor fails to obtain a

stay pending the appeal, if the creditor who purchases the property is a party to the appeal and if statutory rights to redemption exist under the applicable state law).

As in Decker, Cornerstone did not seek to avoid the sale. Cornerstone has never argued that the sale should not proceed. Like the appellant in Decker, Cornerstone assets it has an interest in the sale proceeds. Cornerstone has never sought to stop the sale, avoid the sale, nor has Cornerstone asserted the sale price was inappropriate or that the sale should not occur. Consistent with the Decker decision, in event that this district court overturns the Hecker bankruptcy court decision, the sale proceeds are either presently in the hands of the Trustee or if they have been distributed to the Trustee's attorney for payment of attorneys fees, the sale proceeds can be in fact redirected back to Cornerstone. Case law is clear that Cornerstone's only issue concerns the distribution of the sale proceeds, stay of the sale is not necessary.

The same result was reached in the case of Matter of Stroud Wholesale, Inc., 47 B.R. 999, 1000 (D.C.N.C. 1985). In Stroud, the bankruptcy court authorized a sale of real property free and clear of the appellants' tax liens. The appellees in Stroud argued that even if the bankruptcy court improperly authorized the sale free and clear of the appellants' tax liens, the question was moot because the appellants did not appeal the sale or obtain a stay. Id. at 1003. The Stroud court stated that since the appellants were not requesting the court to invalidate the sale, avoid the sale, but instead seeking a share of the sale proceeds in an amount equal to the value of their liens on the property, no stay of the sale was required and the failure to obtain the stay did not render the appeal moot. Id. The Court stated that the appellants were asking the Court to distribute the proceeds as though the sale of the debtor's property was made subject to all liens and interests rather

than free and clear of all of the liens and interests.  Id.  Consequently, even though any issues regarding the actual sale of property may have been moot, the issues regarding the appellant's interest in the proceeds of the sale were not moot.  Id.  The same result was reached in the case of Loraine, 198 B.R. at 18.  The Loraine bankruptcy case was comprised of a single asset which the debtor sought to circumvent a creditor's foreclosure action by filing a Chapter 11 bankruptcy petition.  The secured foreclosing creditor filed a Chapter 11 plan of reorganization.  The creditor purchased the single asset property at a bankruptcy court ordered auction.  Various appeals ensued in the Chapter 11 case.  One of the issues was whether various appeals were rendered moot because of a sale of the sole asset of the bankruptcy estate occurred and distributions had been made under the Chapter 11 plan of reorganization.  The court found that the appeals were not moot even though stays were not obtained.  The court observed that although distributions were made under the plan, the distributions were simple, well documented, and if the appellant prevailed, reversal would only require the creditors receiving payment to pay back the funds to the bankruptcy estate for subsequent distribution to the appellant.  The Court stated that the appellant did not need to pursue a stay pending the appeal since all of the parties were before the court for the appeal, and all of the parties would have an opportunity to participate in the appeal proceedings.  Id.  The Loraine Court stated that it is more desirable to decide a case on its merits instead of dismissing it as moot.  Id.

The issues regarding Cornerstone's interest in the proceeds of the sale are not moot.  Cornerstone has a security interest in Dennis Hecker's general intangibles.  The proceeds from the Trustee's sale of Dennis Hecker's corporate assets are subject to Cornerstone Bank's security interest.  Because the issues on appeal relate solely to

Cornerstone's interest in the sale proceeds, and not the sale itself, Cornerstone is not required to file a stay pending the appeal. The only issue before this court is the rights and entitlements in the settlement proceeds. The parties are the Trustee and Cornerstone. All the interested parties are parties to this present appeal. Cornerstone did not object to the sale but simply objected to the court making a determination, prior to an evidentiary hearing, as to the parties entitlements and rights in the sale/settlement proceeds. Cornerstone's appeal is not moot.

      **B.**     **<u>Cornerstone's appeal is not an interlocutory appeal because the bankruptcy court's order was a final order.</u>**

The Trustee may argue this appeal is an interlocutory appeal and that the rights of the parties cannot be resolved by this appeal. This appeal will render a finality regarding Cornerstone Bank's interest in the sale proceeds.

The timeliness of an appeal is subject to the circumstances surrounding the appeal. <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1945 (U.S. 2009). "Under the collateral-order doctrine, a limited set of district-court orders are reviewable though short of final judgment." <u>Id.</u> The collateral-order doctrine dictates that district court orders are immediately appealable because they "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." <u>Id.</u>

The bankruptcy court's order here is immediately appealable since the order was a collateral order. The order incorrectly determined the rights of the parties with respect to the sale proceeds. The order states that it is "binding upon the debtor, all creditors of the

debtor and parties in interest in the case, and inures to the benefit of the trustee and the buyer and all applicable successors and assigns, and Toyota Motor Sales, U.S.A., Inc." Moreover, the order provides that is "effective immediately."  Because the order was binding upon all parties and become effective immediately, it is a collateral order that determined the rights of all parties.  In other words, while the bankruptcy proceedings may not be final, the bankruptcy order is final, and final orders are appealable.  Id.

The collateral order doctrine is particularly applicable here because an appeal from a bankruptcy order is involved.  Orders in bankruptcy cases are unique.  "Virtually all decisions agree that the concept of finality applied to appeals in bankruptcy is broader and more flexible than the concept applied in ordinary civil litigation."  16 Fed. Prac. & Proc. Juris. § 3926.2 (2d ed.).  "The most important concern in defining the final judgment jurisdiction of the courts of appeals is that it not be limited rigidly to the concepts of finality that apply in other settings."  Id.  In bankruptcy cases, an order that ultimately disposes of a "discrete dispute within a larger case" is considered final and appealable.  Tringali v. Hathaway Mach. Co., 796 F.2d 553, 558 (1st Cir. 1986).

In In re Olson, 730 F.2d 1109, 1109 (8th Cir. 1984), the Eighth Circuit Court of Appeals considered three factors to determine whether the bankruptcy order was final: (1) whether the order would leave the bankruptcy court with nothing to do but execute the order; (2) whether the delay in obtaining appellate review would prevent the aggrieved party from obtaining effective relief; and (3) whether a later reversal on the issue determined by the bankruptcy order would require recommencement of the entire proceeding.  The standard for determining the finality of orders in bankruptcy proceedings is more liberal than the standard applied in traditional civil litigation.  Id. at

1109-1110.  In <u>Olson</u>, the Court determined that the bankruptcy order was final.  <u>Id.</u> at 1110.  The <u>Olson</u> Court observed that the order resolved the issues of the priority of claims between the appealing parties; the ruling directed payment of the appellee's claims.  <u>Id.</u>  The order provided that nothing remained unsettled except for the trustee to enforce the order.  <u>Id.</u>  The <u>Olson</u> Court held that if the court did not entertain the appeal, the appellant would not be able to seek review of the order until the conclusion of the entire bankruptcy proceeding by which time the appellee could have already spent the funds in question making it more difficult for the appellant to seek effective relief.  <u>Id.</u> Finally, the <u>Olson</u> Court held that if it later determined that the bankruptcy court erred in giving priority to the appellee's claims, "the distribution of assets might have to be substantially redone to allow for the redistribution of the funds wrongly paid."  <u>Id.</u>

In the present case, the <u>Hecker</u> bankruptcy court's order was final since the bankruptcy court's order determined the parties interests to the settlement proceeds.  As a result of the <u>Hecker</u> bankruptcy court's order, nothing remained for the Trustee to do but to <u>execute</u> and deliver the settlement agreement, and all documents and instruments <u>necessary to effectuate the transactions</u> contemplated under the Settlement Agreement. The same concerns in <u>Olson</u> are present before this court.  If this appeal is not heard now, the funds in question may disappear and making it more difficult for Cornerstone to seek effective relief.  Additionally, if this appeal is heard at some later point, the distribution of assets might have to be substantially redone to allow for redistribution of the funds wrongly paid.

The <u>Hecker</u> bankruptcy court's order settles all parties rights and entitlements in the settlement funds.  The order is final.  "[A]s long as an order allowing a claim or

priority effectively settles the amount due the creditor, the order is 'final' even if the claim or priority may be reduced by other claims or priorities." In re Yukon Energy Corp., 138 F.3d 1254, 1258-59 (8th Cir. 1998) quoting In re Saco Local Dev. Corp., 711 F.2d 441, 448 (1st Cir.1983).  Because the bankruptcy court's order is final, this appeal is not interlocutory, and this immediate appeal is appropriate.

## VII.   CONCLUSION

**WHEREFORE**, Cornerstone Bank, Cornerstone Holding Company, Inc., and Blackstone Financial, Inc., hereby request that this Court remand this case for an evidentiary hearing to determine Cornerstone's security interest in the proceeds of the sale of assets and alleged settlement of the TMCC preference.

Dated this 5th day of January 2010.

/s/ Brad A. Sinclair
Brad A. Sinclair
**SERKLAND LAW FIRM**
State Bar ID No. 0161652
10 Roberts Street
PO Box 6017
Fargo, ND 58108-6017
Telephone (701) 232-8957
Facsimile (701) 237-4049
**ATTORNEYS FOR CORNERSTONE BANK, CORNERSTONE HOLDING COMPANY, INC., AND BLACKSTONE FINANCIAL, INC.**