# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

In re:                                          BKY Case No.:  09-50779

Dennis E. Hecker,                                          Chapter 7

        Debtor.

---

Cornerstone Bank,                          District Case No.:  09-3645 JRT
Cornerstone Holding Co., Inc.,
Blackstone Financial, LLC,

        Appellants,

vs.

Randall L. Seaver, Trustee,

        Appellee.

---

## APPELLEE'S BRIEF

---

Appeal from the United States Bankruptcy Court
For the District of Minnesota

---

Matthew R. Burton, #210018              Brad A. Sinclair, #0161652
Andrea M. Hauser, #207469               SERKLAND LAW FIRM
LEONARD O'BRIEN                         10 Roberts Street
  SPENCER, GALE & SAYRE, Ltd.         P.O. Box 6017
100 South Fifth Street, Ste. 2500       Fargo, ND 58108-6017
Minneapolis, Minnesota  55402           (701) 232-8957
(612) 332-1030

*Attorneys for Appellee Randall L. Seaver,*     *Attorneys for Cornerstone Bank, Cornerstone*
*Trustee*                                       *Holding Co., Inc. and Blackstone Financial,*
                                               *LLC*

415342

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................iii

ISSUES PRESENTED FOR REVIEW .......................................................................1

STANDARD OF APPELLATE REVIEW.....................................................................1

STATEMENT OF THE CASE ....................................................................................2

STATEMENT OF FACTS .........................................................................................3

SUMMARY OF THE ARGUMENT ...........................................................................7

ARGUMENT ...........................................................................................................8

I.      THE BANKRUPTCY COURT'S ORDER MUST BE AFFIRMED AS THE COURT
        PROPERLY EXERCISED ITS DISCRETION BY APPROVING THE SETTLEMENT
        AGREEMENT   FOR   SALE   OF   THE   BRAINERD   DEALERSHIP,   THE
        ABANDONMENT OF ASSETS, AND THE SETTLEMENT OF PREFERENCE
        CLAIMS ....................................................................................................... 8

        A.      The Approval of a Settlement Agreement as Fair, Reasonable and in the Best
                Interest of Creditors is a Matter Committed to the Discretion of the Bankruptcy
                Judge .................................................................................................8

        B.      The Record Supports the Bankruptcy Court's Determination that the Settlement
                Agreement Regarding the Sale of the Brainerd Dealership, the Resolution of the
                Preference Liability, and the Abandonment of Assets was in the Best Interests of
                Creditors and the Estate ..........................................................................9

        C.      The Bankruptcy Court Did Not Abuse its Discretion By Entering the Order on an
                Expedited Basis Without an Evidentiary Hearing on Cornerstone's Asserted
                Security Interest as There Was No Value in the Collateral to Which a Security
                Interest Could Attach .............................................................................12

II.     CORNERSTONE'S APPEAL IS MOOT AS THE ASSET SALE HAS CLOSED,
        ASSETS HAVE BEEN ABANDONED AND THE PARTIES TO THE SETTLEMENT
        HAVE MADE SUBSTANTIAL ECONOMIC COMMITMENTS IN RELIANCE ON
        THE COURT APPROVED SETTLEMENT AGREEMENT.............................................14

        A.      After the Closing on a Court-Authorized Sale under 11 U.S.C. §363, any Appeal
                of the Sale Order is Moot under §363(m) and Bankruptcy Rule 8005 .....................15

B.    As Cornerstone Failed to Obtain a Stay, the Sale Closed and Cornerstone's Appeal of the November 25, 2009 Order is Moot.................................................................17

CONCLUSION...............................................................................................................18

ADDENDUM ................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405 (1990) .......................................................... 2

*Gen. Electric Co. v. Sciaky Bros., Inc.*, 304 F. 2d 724 (6th Cir. 1962) ........................................ 17

*Grunin v. International House of Pancakes,* 513 F.2d 114, 123 (8th Cir.), *cert. denied,* 423 U.S. 864 (1975) ........................................................................................................................ 9

*In re Flight Transp. Corp. Sec. Litig.,* 730 F.2d 1128, 1135-36 (8th Cir. 1984), *cert denied sub nom. Reavis & McGrath v. Antinore,* 469 U.S. 1207 (1985) ...................................................... 2

*In re Hilal,* 226 F. App'x 381, 383 n. 1 (5th Cir. Apr. 2, 2007) .................................................. 17

*Manges v. Seattle-First National Bank (In re Manges,* 29 F. 3d 1034, 1038 (5th Cir. 1994) ....... 15

*Nieters v. Sevcik (In re Rodriquez),* 258 F.3d 757, 759 (8th Cir. 2001) .................................. 8, 16

*Official Committee of Unsecured Creditors v. Farmland Industries, Inc. (In re Farmland Industries, Inc.),* 296 B.R. 188, 192 (8th Cir. BAP 2003) .......................................................... 2

*Powell v. McCormack,* 89 S.Ct. 1944, 1951, n. 7, (1969) ........................................................... 15

*Reagan v. Wetzel, et al. (In re Reagan),* 403 B. R. 614, 620 (8th Cir. BAP 2009) ...................... 16

*ReGen Capital III, Inc. v. Official Committee of Unsecured Creditors (In re Trism),* 282 B.R. 662, 666 (8th Cir. BAP 2002) ................................................................................................ 2, 8, 9

*Ronit, Inc. v. Stemson Corp. (In re Block Shim Dev. Co.),* 939 F.2d 289, 291 (5th Cir.1991)..... 16

*In re Security Life Ins. Co.,* 228 F.3d 865, 870 (8th Cir. 2000) ................................................. 8, 16

*In re Supplement Spot, LLC*, 2009 WL 1684577 (S.D. Tex. 2009) ........................................ 17, 18

*TCF Banking & Sav. v. Leonard (In re Erickson),* 82 B.R. 97, 99 (D.Minn.1987) ....................... 2

*United States v. Fitzgerald,* 109 F.3d 1339, 1342 (8th Cir.1997) .................................................. 16

*Van Iperen v. Prod. Credit Assoc. of Worthington-Slayton Branch (In re Van Iperen),* 819 F.2d 189, 191 (8th Cir. 1987) ............................................................................................................ 16

*Wintz v. American Freightways, Inc. (In re Wintzs Cos.),* 219 F.3d 807, 811 (8th Cir.2000)...... 16

**Statutes**

11 U.S.C. §363 ......................................................................................................... 1, 16

11 U.S.C. §363(m) ........................................................................................................ 15

11 U.S.C. §547(b) ............................................................................................... 5, 10, 14

11 U.S.C. §547(f) ......................................................................................................... 14

11 U.S.C. §550(a) ......................................................................................................... 14

28 U.S.C. §158 ........................................................................................................... 3, 7

28 U.S.C. §158(c)(1)(A) .............................................................................................. 3, 7

**Rules**

Bankruptcy Rule 8005 ............................................................................................. 15, 16

Bankruptcy Rule 8013 .................................................................................................... 2

Bankruptcy Rule 9019 ............................................................................................... 1, 8

## ISSUES PRESENTED FOR REVIEW

1.      Whether the Bankruptcy Court abused its discretion in authorizing the Settlement Agreement between the Trustee and Brainerd Imports, LLC, Jacob Holdings of Baxter, LLC and Toyota Motor Credit Corporation?

<u>Result Below</u>: The Bankruptcy Court concluded that based on the record and the statements made in court, the Settlement Agreement was in the best interests of creditors and the Estate.

2.      Whether the Bankruptcy Court abused its discretion by approving the Settlement Agreement for the sale of assets, the abandonment of assets, and the settlement of preference claims without first holding an evidentiary hearing on Appellant Cornerstone's claimed security interest in the Debtor's general intangibles.

<u>Result Below</u>:  The Bankruptcy Court held that the Toyota Motor Credit Corporation's first priority lien claims exceeded the value of the Dealership Assets and the Baxter Real Estate, leaving no value to which Cornerstone's asserted security interest in general intangibles could attach.

3.      Where parties to a settlement agreement have made substantial economic commitments in reliance on a court order approving a settlement agreement and sale of assets under 11 U.S.C. §363, is the appeal of that court order moot where the appellant fails to seek the stay of the order and to post a supercedeas bond?

## STANDARD OF APPELLATE REVIEW

The decision whether to approve or disapprove a proposed settlement under Bankruptcy Rule 9019 is a matter within the discretion of the bankruptcy judge.  *In re Flight Transp. Corp. Sec. Litig.,* 730 F.2d 1128, 1135-36 (8th Cir. 1984), *cert denied sub nom. Reavis & McGrath v.*

*Antinore,* 469 U.S. 1207 (1985); *TCF Banking & Sav. v. Leonard (In re Erickson),* 82 B.R. 97, 99 (D.Minn.1987). The District Court will not set aside the Bankruptcy Court's decision to approve a settlement unless the Bankruptcy Court abused its discretion. "An abuse of discretion occurs if the court bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *ReGen Capital III, Inc. v. Official Committee of Unsecured Creditors (In re Trism)*, 282 B.R. 662, 666 (8th Cir. BAP 2002) *citing Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405 (1990).

"Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous." Bankruptcy Rule 8013. The District Court reviews findings of fact for clear error and reviews legal conclusions *de novo. See Official Committee of Unsecured Creditors v. Farmland Industries, Inc. (In re Farmland Industries, Inc.), 296 B.R. 188, 192 (8th Cir. BAP 2003).*

## STATEMENT OF THE CASE

Dennis E. Hecker (the "**Debtor**") filed a voluntary Chapter 7 petition on June 4, 2009 and Appellee Randall L. Seaver (the "**Trustee**") was appointed Trustee to administer the Bankruptcy Estate.

On November 20, 2009, the Trustee filed a Motion for Approval of Settlement Agreement and Abandonment and for Expedited Hearing. Appellee's Appendix at 1 (hereinafter, "AA- ___"). The subject of the Settlement Agreement was the sale of a Toyota Dealership in Brainerd, Minnesota. All interested parties including Appellants Cornerstone Bank, Cornerstone Holding Co., Inc. and Blackstone Financial, LLC ("collectively referred to as "**Cornerstone**") received electronic notice of the Trustee's Motion on November 20, 2009. AA-9.

On November 24, 2009, Cornerstone filed its Objection to the Trustee's Motion.  After a hearing on November 25, 2009, the Bankruptcy Court overruled Cornerstone's objection and entered an order approving the Settlement Agreement and authorizing the sale of assets, the abandonment of assets, and the resolution of a preference claim ("**Order**").  AA-18.  On the evening of November 25, 2009 and during the next day, the sale transaction closed. AA-20-26.

On December 7, 2009, Cornerstone filed its Motion for Leave to Appeal the November 25, 2009 Order Approving the Settlement Agreement and Notice of Appeal under 28 U.S.C. §158, and its Election that Appeal Be Heard by the United States District Court under 28 U.S.C. §158(c)(1)(A).  Cornerstone did not seek a stay of the Order and did not post a bond.

## STATEMENT OF FACTS

On June 4, 2009, when this bankruptcy proceeding was commenced, the Debtor held 99% of the membership interests in Brainerd Imports, LLC, a Minnesota limited liability company which owned and operated a motor vehicle sales and service dealership under the name "Denny Hecker's Toyota Scion of Baxter/Brainerd" ("**Brainerd Dealership**").   Settlement Agreement at 1, AA-27.   The Debtor, however, had pledged his shares to Toyota Motor Credit Corporation ("**TMCC**").   Inver Grove Investments, Inc., a corporation wholly owned by the Debtor, held the remaining 1% interest in the Brainerd Dealership.  The Brainerd Dealership was an authorized Toyota dealer under a Toyota Dealer Agreement with Toyota Motor Sales, U.S.A., Inc. ("**TMS**").  *Id.*

The Brainerd Dealership conducted its business on real estate in Baxter, Minnesota owned by Jacobs Holdings of Baxter, Inc., a wholly-owned subsidiary of Jacob Properties of Minnesota, LLC.   *Id.*   The Debtor held 91% of the membership interests of Jacob Properties of Minnesota, LLC.  *Id.*

The Brainerd Dealership had ceased doing business in June 2009 and had been on the market for approximately six months.  Statement of Greg Taddonio, attorney for Toyota Motor

Credit Corporation, Transcript of November 25, 2009 hearing at 29 (hereinafter, "Tr. at __");
AA-61. Throughout the fall of 2009, TMS threatened to terminate the Brainerd Dealership's
ability to operate as a dealership for Toyota vehicles. Settlement Agreement at 1, AA-27. TMS
obtained an order granting it relief from the automatic stay to terminate the dealership agreement
on November 12, 2009. AA-12.

### Sale of the Brainerd Dealership Assets and the Baxter Real Estate

The Trustee and Paul M. Walser negotiated terms of an Asset Purchase Agreement
whereby Brainerd T, LLC, as Buyer, agreed to purchase Dealership Assets from Brainerd
Imports, LLC, for $3,253,118, and to assume the Brainerd Dealership's debt to TMCC. Asset
Purchase Agreement, AA-131. Closing Statement for Asset Purchase Agreement, AA-20. The
Trustee and Paul M. Walser also negotiated terms of a Real Estate Purchase Agreement by which
Walser Real Estate IV, LLC agreed to acquire the Baxter Real Estate from Jacob Holdings of
Baxter, LLC for over 5.1 million dollars, the closing of which would occur simultaneously with
the closing of the sale of assets under the Asset Purchase Agreement. AA-149. The Buyers,
Brainerd T, LLC and Walser Real Estate IV, LLC are limited liability companies controlled by
Paul M. Walser (collectively referred to as "**Walser**.")

TMCC held perfected, first priority liens against the Dealership Assets and the Baxter
Real Estate under various loan and security agreements ("**TMCC Obligations**"). Settlement
Agreement at 2, AA-28; Tr. at 27-28; AA-59-61. As Trustee for the Estate of Dennis Hecker,
and on behalf of Brainerd Imports, LLC and Jacob Holdings of Baxter, LLC, the Sellers in both
Purchase Agreements, the Trustee entered into a Settlement Agreement with TMCC to allow for
the sale of the Dealership Assets and the Baxter Real Estate free and clear of TMCC Obligations.
*See* Settlement Agreement, AA-27.

### Resolution of Preference Liability

The Debtor's schedules listed pre-petition payments of the Debtor's personal funds exceeding $200,000 to TMCC during the 90-day period prior to the commencement of the bankruptcy proceeding.  Statement of Financial Affairs, para. 3(b), AA-170.   In addition, the Debtor had transferred his membership certificates in Brainerd Imports, LLC to TMCC in May 2009.  Settlement Agreement, Recitals, para. I, AA-28.  TMCC recognized that these transfers could support potential preference claims of the Bankruptcy Estate against TMCC under 11 U.S.C. §547(b).  Tr. at 28, AA-60.  A successful preference action against TMCC would have resulted in an increase in TMCC's security interest in the Dealership Assets.  In a earlier attempt to effect a sale of the Brainerd Dealership in October 2009, TMCC had demanded that the Trustee's proceeds be escrowed until preference issues were resolved. Tr. at 5, AA-37.

Under the Settlement Agreement, TMCC agreed to the sale of the Dealership Assets and the Baxter Real Estate only on the condition that there was a resolution of the anticipated preference claims.   The resolution of TMCC's preference liability was a pre-condition of TMCC's willingness to enter into the Settlement Agreement.  Tr. at 28-29, AA-60-61. TMCC agreed to accept a payment of less than full value of its security interests and release its liens against the Dealership Assets and to pay the Trustee $425,000.00 from the sale proceeds as a settlement of preference claims against TMCC up to $425,000.00.  Settlement Agreement at 3, AA-29.

### Bankruptcy Court Approval of the Settlement Agreement and Sale

The Trustee's goal in negotiating the sale of the Brainerd Dealership and the abandonment of the Debtor's limited liability companies, Jacobs Holdings of Baxter, Inc. and Jacob Properties of Minnesota, LLC, was to: (a) realize value from the Brainerd Dealership

through a preference recovery; (b) ensure that the creditors of the Brainerd Dealership were paid; and (c) to protect the bankruptcy estate from adverse tax consequences.

On November 20, 2009, the Trustee sought bankruptcy court approval of the Settlement Agreement and sales on an expedited basis and for authorization to abandon property by filing a motion which was set for hearing on November 25, 2009. *See* Trustee's Motion, AA-1. On November 24, 2009, Cornerstone filed its Objection to the Trustee's Motion of Approval of Settlement Agreement and Abandonment Regarding Brainerd Imports LLC and Jacob Holdings of Baxter, LLC. Cornerstone asserts a security interest in all of the Debtor's general intangibles, including the equity in the limited liability companies which the Debtor controlled.

On November 25, 2009, after a hearing on the Trustee's Motion, the Bankruptcy Court overruled Cornerstone's objection and entered the Order approving the Settlement Agreement and the sale to Walser, and authorizing the Trustee to abandon the Estate's interest in Jacob Properties of Minnesota, LLC and Jacobs Holdings of Baxter, Inc. AA-18. The Bankruptcy Court based the Order on findings made on the record, including the following:

1.      There is no value in the Dealership Assets or the Baxter Real Estate which exceeds the value of TMCC's security interests in those assets. Tr. at 33, AA-65.

2.      There is no value or equity in the Dealership Assets or the Baxter Real Estate which could "flow down to the equity" in the limited liability companies which owned those assets, and in which Cornerstone claims a security interest. Tr. at 33-34, AA-65-66.

3.      The Settlement Agreement resolved legitimate preference claims of the Bankruptcy Estate against TMCC under 11 U.S.C. §547 that benefits the Estate by recovering $425,000 for creditors. Tr. at 33, AA-65.

4.     The resolution of the preference claims in the Settlement Agreement was not a subterfuge to eliminate a claim of Cornerstone. Tr. at 33, AA-65.

5.     Jacobs Holdings of Baxter, LLC and Jacob Properties of Minnesota, LLC, limited liability companies controlled by the Debtor, were of inconsequential value to the estate or would have been potentially burdensome to the Estate, in the event that they have unpaid tax liabilities.  Tr. at 34-35, AA-66-67.

6.     The Settlement Agreement, including the sale of assets, the recovery of preference claims, and the abandonment of property, represents a resolution of potentially costly litigation, provides funds for creditors, and preserves jobs in the Baxter community.  Tr. at 35, AA-67.

The Order was immediately effective upon entry.  Order, AA-18.   Cornerstone did not request a stay of the Order or the sale pending appeal.  On the evening of November 25, 2009 and during the next day, the sale transaction closed.  *See* Settlement Statements, AA-20-26.  On November 27, 2009, Walser reopened Toyota Scion of Baxter/Brainerd for business.  As a result of the closing, the Trustee waived his ability to pursue preference claims against TMCC, unless they exceed $425,000.  All parties to the transaction have materially altered their economic circumstances based on the Order.

On December 7, 2009, Cornerstone filed its Motion for Leave to Appeal and Notice of Appeal under 28 U.S.C. §158, and its Election that Appeal Be Heard by the United States District Court under 28 U.S.C. §158(c)(1)(A).

## SUMMARY OF THE ARGUMENT

The Bankruptcy Court properly exercised its discretion in approving the Settlement Agreement and sale of the Brainerd Dealership and Baxter Real Estate to the Walser, the

Trustee's settlement of the preference claim against TMCC, and the abandonment of the Estate's interest in the limited liability companies, all of which were in the best interest of the Bankruptcy Estate and creditors. *See, ReGen Capital III, Inc. vs. Official Committee of Unsecured Creditors, (In re Trism)*, 282 B.R. 662, 664 (8th Cir. BAP 2002). Therefore, the Order approving the Settlement Agreement and the sale must be affirmed. *See In re Flight Transp. Corp. Sec. Litig.,* 730 F.2d 1128, 1135-36 (8th Cir.1984), *cert denied sub nom. Reavis & McGrath v. Antinore,* 469 U.S. 1207 (1985).

Cornerstone's appeal should be dismissed as moot as Cornerstone posted no bond and failed to seek a stay of the Order, and the intervening sale of the Brainerd Dealership eliminates the District Court's ability to provide relief. *See, Nieters v. Sevcik (In re Rodriquez),* 258 F.3d 757, 759 (8th Cir. 2001) *(per curiam) citing In re Security Life Ins. Co.,* 228 F.3d 865, 870 (8th Cir. 2000).

## ARGUMENT

**I.    THE BANKRUPTCY COURT'S ORDER MUST BE AFFIRMED AS THE COURT PROPERLY EXERCISED ITS DISCRETION BY APPROVING THE SETTLEMENT AGREEMENT FOR THE SALE OF THE BRAINERD DEALERSHIP, THE ABANDONMENT OF ASSETS, AND THE SETTLEMENT OF PREFERENCE CLAIMS.**

**A.    The Approval of a Settlement Agreement as Fair, Reasonable and in the Best Interest of Creditors is a Matter Committed to the Discretion of the Bankruptcy Judge.**

The Order approving the Settlement Agreement must be affirmed unless Appellants demonstrate that the Bankruptcy Court abused its discretion. *See, In re Trism*, 282 B.R. 662, 664 (8th Cir. BAP 2002).   The approval of a settlement under Bankruptcy Rule 9019 as fair, reasonable, and in the best interest of creditors "is committed to the sound discretion of the trial

judge." *Trism* at 664, *quoting Grunin v. International House of Pancakes,* 513 F.2d 114, 123

(8th Cir.), *cert. denied,* 423 U.S. 864 (1975).

In determining the fairness and reasonableness of a settlement, the bankruptcy court must

consider the following factors: "(a) the probability of success in the litigation; (b) the difficulties,

if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved,

and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of

the creditors and a proper deference to their reasonable views in the premises." *In re Flight*

*Transp. Corp. Sec. Litig.*, 730 F. 2d 1128, 1135-36 (8th Cir. 1984), *cert denied sub nom, Reavis*

*& Mc Grath v. Antinore*, 469 U.S. 1207 (1985).

**B.     The Record Supports the Bankruptcy Court's Determination that the Settlement Agreement Regarding the Sale of the Brainerd Dealership, the Resolution of the Preference Liability and the Abandonment of Assets was in the Best Interests of Creditors and the Estate.**

Here the Bankruptcy Court based its Order on findings made on the record, all of which

are supported by the documents filed with the Trustee's pleadings and by statements made in

court.  As the record clearly supports the Bankruptcy Judge's findings and legal conclusions as

described below, the Order approving the Settlement Agreement must be affirmed.

1.     The dollar amount of TMCC's liens and security interests exceeded the value of TMCC's collateral, the Dealership Assets and the Baxter Real Estate.
       Tr. 33-34, AA-66-67.

TMCC held first priority liens in all of the Dealership Assets, including the Baxter Real

Estate.  Tr. at 6, AA-38.   TMCC's liens exceeded the value of those assets.  The Settlement

Agreement states "Under the transaction proposed by the Trustee and Buyers [Walser], TMCC

would not receive full payment at closing for the TMCC Obligations."   Settlement Agreement,

Recitals, para. K., AA-28.

Matthew Burton, attorney for the Trustee, stated at the hearing that "Toyota Motor Credit is not being paid in full in this transaction."  Tr. at 8, AA-39-40.  Greg Taddonio, attorney for TMCC, also advised the Court, "Toyota Motor Credit is not getting paid in full at closing."  Tr. at 27, AA-59.   Cornerstone never challenged this assertion in the Bankruptcy Court.

> 2.      There is no equity in the Dealership Assets or the Baxter Real Estate which could "flow down" to satisfy claims against the Sellers, Brainerd Imports, LLC, and Jacob Holdings of Baxter, LLC, the entities in which Cornerstone asserted it held a security interest.
> Tr. at 33-34, AA-65-66.

TMCC's liens encumbered the full value of the Dealership Assets and the Baxter Real Estate.  Cornerstone has asserted a security interest in the Debtor's general intangibles, including the Debtor's interest in his limited liability corporations, Brainerd Imports, LLC, and Jacobs Holdings of Baxter, Inc., which in turn owned the Dealership Assets and the Baxter Real Estate.  As there was no equity in the Dealership Assets and the Baxter Real Estate, there was no collateral of value to which Cornerstone's claimed security interest could attach.

> 3.      The Settlement Agreement resolved legitimate preference claims of the Bankruptcy Estate against TMCC that benefit the Estate by recovering $425,000 for creditors, and was not a subterfuge to eliminate Cornerstone's claim.
> Tr. at 33-35, AA-64-66.

In describing the basis for the Trustee's preference claims against TMCC, Attorney Matthew Burton referred to the Debtor's Statement of Financial Affairs, para. 3(B), which lists the Debtor's payments of over $200,000 to TMCC between March 12, 2009 and March 24, 2009, within the 90-day preference period of 11 U.S.C. §547(b). Tr. at 6, AA-38; AA-168-171.  Mr. Burton also referred to the Debtor's transfer of his membership certificates for Brainerd Imports, LLC to TMCC.  Tr. at 6-7, AA-38-39.  Attorney Greg Taddonio acknowledged that because of potential preference claims, TMCC would not release its liens against the Dealership Assets and the Baxter Real Estate unless the preference issue was resolved.

> If the Trustee brought a preference action against Toyota Motor Credit and succeeded then that would increase the amount and size of the Toyota Motor Credit secured claim and depending on when that action is brought, if it occurs after this closing, all of the funds that would go to the estate or to unsecured creditors would have been disbursed and there would be no proceeds back for Toyota Motor Credit to recover. So from that standpoint of Toyota was unwilling to release its liens unless we have a resolution of this preference issue and that's why it is an integral part of this matter.

Tr. at 28, AA-60.   The Debtor's transfers to TMCC within the preference 90-day period to TMCC and TMCC's conditions for agreeing to execute sale documents are recited in the Settlement Agreement, Recitals, paras. I, K; AA-28.   While there was no "equity," the Trustee would have recovered any equity as a part of his preference claims against TMCC due to the pledge of Debtor's memberships interests during the preference period.

> 4.     Jacob Holdings of Baxter, LLC  and Jacob Properties of Minnesota, LLC, limited liability companies controlled by the Debtor, were of inconsequential value to the estate or were potentially burdensome to the Estate, in the event that they have unpaid tax liabilities. Tr. 34-35, AA-66-67.

At the hearing, Mr. Burton stated that the Trustee's tax professional had advised the Trustee to abandon Jacob Holdings of Baxter, LLC and Jacob Properties of Minnesota, LLC, concurrent with the closing on the sale of the Dealership Assets and the Baxter Real Estate. Jacob Properties of Minnesota, LLC, the Debtor's real estate holding company, owned Jacob Holdings of Baxter, LLC, which in turn owned the Baxter Real Estate. Tr. at 9, AA-41. The tax returns for the Debtor and for his limited liability companies had not been completed. *Id.* Thus it was not possible to assess the potential tax consequences to the Bankruptcy Estate arising from the Trustee's execution of the sale documents. *Id.* The Trustee's abandonment of Jacob Holdings of Baxter, LLC and Jacob Properties of Minnesota, LLC had the effect of shifting the tax consequences of the sale to the Debtor, who did not object to the proposed abandonment. Tr. at 10, AA-42.

The Bankruptcy Court approved the Trustee's abandonment of the limited liability companies which owned the Baxter Real Estate, on the basis that it was appropriate for the Trustee to avoid potential negative tax consequences to the Estate and because of a lack of evidence showing that the limited liability companies had value to the Estate.  Tr. 35, AA-67. The Bankruptcy Court properly exercised its discretion in approving the abandonment of assets.

5.      The Settlement Agreement represents a resolution of potentially costly litigation, provides funds for creditors of the Brainerd Dealership and for creditors of the Estate, and preserves a number of jobs in the Baxter community.
Tr. at 35, AA-67.

The Bankruptcy Court properly exercised its discretion in approving the Settlement Agreement as the record showed it was a compromise of difficult issues, it was in the best interest of creditors, and it benefitted the Estate.  Mr. Burton and Mr. Taddonio described the efforts of the various parties involved to preserve the Toyota franchise in the Baxter community, to pay unsecured creditors of the Dealership, to resolve legal questions which "would be costly and expensive and uncertain in result", and to provide money to creditors.  Tr. 5-7, 10-13, 29, 35; AA-37-39; 42-45; 61; 67.

**C.      The Bankruptcy Court Did Not Abuse Its Discretion by Approving the Settlement Agreement Without an Evidentiary Hearing on Cornerstone's Asserted Security Interest as There Was No Equity in the Limited Liability Companies to Which the Cornerstone Claimed Its Interest Could Attach.**

Cornerstone asserts that the Bankruptcy Court erred by not first conducting an evidentiary hearing on Cornerstone's claim to the preference settlement proceeds of $425,000.

The Bankruptcy Court correctly overruled Cornerstone's objection because TMCC's first priority security interests exceeded the value of the Dealership Assets and the Baxter Real Estate. TMCC accepted less than full value of its claims in the sale because the amount of its claims exceeded the value of the collateral.  Again, Cornerstone has never challenged the assertion that

TMCC's claims exceeded the dollar amount that it agreed to accept in full satisfaction of the TMCC Obligations.

Cornerstone asserts that the Bankruptcy Court should have conducted an evidentiary hearing on the valuation of all of the assets and claims at issue.   If it is assumed that Cornerstone has a valid claim to any proceeds from this sale transaction, there would have to have been value in the Dealership Assets and the Baxter Real Estate exceeding the amount of TMCC's first priority secured claims.

Mr. Taddonio, TMCC's attorney, confirmed at the hearing that TMCC had agreed to accept less than full value for its claims, but that TMCC required a resolution of potential preference claims in order to proceed with the sale and release its liens against the Dealership assets.   If TMCC's claims had been fully secured, it would not have accepted less than the amount of its first priority liens, nor would it have been concerned about resolving potential preference claims, nor would it have agreed to pay $425,000 to the Trustee to resolve those claims.   If counsel for Cornerstone doubted the representations that the collateral was worth less than the dollar amount of TMCC's liens, and doubted that TMCC held unsecured claims, Cornerstone's counsel had the opportunity to cross-examine Greg Taddonio on those very issues at the hearing on November 24, 2009. The records support the Bankruptcy Court's finding that no such value existed.   For that reason, it was not necessary for the Bankruptcy Court to conduct an evidentiary hearing and the Court properly issued the Order approving the sale on an expedited basis.

A preferential payment is a transfer of property in which the debtor has an interest, on account of an antecedent debt, made within the 90 days prior to the commencement of the bankruptcy case which allows the creditor to receive more than it would have otherwise received

in the bankruptcy case.  11 U.S.C. §547.  The debtor is presumed to be insolvent during that 90-day period.  11 U.S.C. §547(f).  In this case, the Debtor transferred his personal funds and membership units to TMCC during the preference period.

Cornerstone argues, among other things, that there could not be a preference as TMCC was fully-secured.  However, for the preference analysis, the focus is on the Debtor's assets, and not those of the limited liability companies.  While TMCC had security interests in the assets of the limited liability companies, as to the Debtor, TMCC was an unsecured creditor.  By accepting payments of the Debtor's funds and his membership units within 90 days of the filing of the bankruptcy, TMCC became exposed to a preference claim.

The Trustee could have avoided and preserved both the payments and the membership units for the benefit of unsecured creditors under 11 U.S.C. §§547(b) and 550(a).  The result would be the recovery of over $200,000 for the estate and the elimination of TMCC's first priority secured position with regard to the equity of the limited liability companies.  Under no circumstances would Cornerstone have been able to recover on its claimed security interest, regardless of whether or not there was equity in the limited liability companies.

The Bankruptcy Court's finding that value did not exist to pay a potential claim of Cornerstone was amply supported by the documents submitted and uncontested statements made on the record. Therefore, the Bankruptcy Court did not abuse its discretion in approving the Settlement Agreement on an expedited basis and allowing the sale to close immediately.

## II.    CORNERSTONE'S APPEAL IS MOOT AS THE SALE HAS CLOSED, ASSETS HAVE BEEN ABANDONED AND NON-ADVERSE THIRD PARTIES HAVE MADE SUBSTANTIAL ECONOMIC COMMITMENTS IN RELIANCE ON THE COURT-APPROVED SETTLEMENT AGREEMENT.

Cornerstone could have sought a stay of the Order pending an appeal but elected not to do so.  Accordingly, the parties closed on the sale of the Brainerd Dealership, the Trustee

14

abandoned estate assets and gave TMCC a release of preference liability. TMCC consented to the closing only because the Settlement Agreement eliminated TMCC's preference exposure. Non-adverse third parties, like Walser, made substantial economic commitments in reliance on the Order.  A simple recharacterization of the transaction cannot be accomplished.  Now that the sale has closed, a reviewing court cannot provide Cornerstone a remedy, and therefore, this appeal is moot.

### A.   After the Closing on a Court-Authorized Sale, any Appeal of the Sale Order is Moot under 11 U.S.C. §363(m) and Bankruptcy Rule 8005.

The question of whether a case is moot reflects the constitutional premise that "only live cases or controversies be decided by our courts."  *Manges v. Seattle-First National Bank (In re Manges*, 29 F. 3d 1034, 1038 (5th Cir. 1994) *citing Powell v. McCormack,* 89 S.Ct. 1944, 1951, n. 7, (1969) (recognizing that the Court's inability to consider the merits of a moot case "is a branch of the [U.S. CONST. art. III] constitutional command that the judicial power extends only to cases or controversies").  In bankruptcy proceedings, appellate courts will deem an issue moot when the proceedings have progressed to "a point beyond which they cannot order fundamental changes in reorganization actions." *Manges* at 1039.

> The test for mootness reflects a court's concern for striking the proper balance between the equitable considerations of finality and good faith reliance on a judgment and the competing interests that underlie the right of a party to seek review of a bankruptcy order adversely affecting him.  The concept of "mootness" from a prudential standpoint protects the interests of non-adverse third parties who are not before the reviewing court but who have acted in reliance upon the plan as implemented.

*Manges* at 1039 (citations omitted).  Bankruptcy courts generally examine three factors in determining whether a case is moot: (i) whether a stay has been obtained; (ii) whether the plan has been "substantially consummated;" and (iii) whether the relief requested would affect either the rights of parties not before the court or the success of the plan. *Ronit, Inc. v. Stemson Corp.*

*(In re Block Shim Dev. Co.),* 939 F.2d 289, 291 (5th Cir.1991).

"If a party appeals an order approving a sale of bankruptcy estate property but does not obtain a stay of the order pending the appeal, the intervening sale of the property eliminates the reviewing court's ability to provide relief, and the appeal must be dismissed as moot." *Nieters v. Sevcik (In re Rodriquez),* 258 F.3d 757, 759 (8th Cir. 2001) *(per curiam) citing In re Security Life Ins. Co.,* 228 F.3d 865, 870 (8th Cir. 2000) (emphasis added). Although the Brainerd Dealership was not bankruptcy estate property, TMCC required the Trustee's approval of the sale, and the transaction affected significant economic rights of third parties. Once a bankruptcy court authorizes a sale to a bonafide purchaser under 11 U.S.C. §363, the Bankruptcy Code specifically prohibits the reversal of the order:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. §363(m); *see also*, Bankruptcy Rule 8005:

> Unless an order approving a sale of property ... is stayed pending appeal, the sale to a good faith purchaser ... shall not be affected by the reversal or modification of such order on appeal, whether or not the purchaser knows of the pendency of the appeal.

After the closing of a sale, a reviewing court can provide no remedy and any appeal of the order authorizing the sale is moot. *See, Reagan v. Wetzel, et al. (In re Reagan)*, 403 B. R. 614, 620 (8th Cir. BAP 2009) *citing Wintz v. American Freightways, Inc. (In re Wintzs Cos.),* 219 F.3d 807, 811 (8th Cir.2000); *United States v. Fitzgerald,* 109 F.3d 1339, 1342 (8th Cir.1997); *Van Iperen v. Prod. Credit Assoc. of Worthington-Slayton Branch (In re Van Iperen),* 819 F.2d 189, 191 (8th Cir. 1987) (per curiam) ("Once collateral is taken and converted into cash, no court is able to

formulate adequate relief to the debtor."). *See also, In re Hilal,* 226 F. App'x 381, 383 n. 1 (5th Cir. Apr. 2, 2007).

> **B.     As Cornerstone Failed to Obtain a Stay, the Sale Closed and Cornerstone's Appeal of the November 25, 2009 Order is Moot.**

Here, Cornerstone had proper notice of the proposed settlement and sale, Cornerstone filed its objection, and attended the hearing on the Trustee's motion for approval of the Settlement Agreement and sale. When the Court overruled Cornerstone's objection and approved the sale, Cornerstone did not seek a stay of the Order.  "Equity aids the vigilant, not those who slumber on their rights." *Gen. Electric Co. v. Sciaky Bros., Inc*., 304 F. 2d 724 (6th Cir. 1962).

The same circumstances arose in the case, *In re Supplement Spot, LLC,* 2009 WL 1684577 (S.D. Tex. 2009) AA-185.   A Chapter 11 trustee sold assets of debtor entity over an objection.  The transactions were funded and consummated.  *Id.*, at *2.  The objecting party did not obtain a stay of the bankruptcy court's order.  The court then ruled as follows:

> In the bankruptcy context, the mootness concept is a "recognition by the appellate courts that there is a point beyond which they cannot order fundamental changes in reorganization actions." "Consequently, a reviewing court may decline to consider the merits of a [compromise and settlement] order when there has been substantial consummation ... such that effective judicial relief is no longer available--even though there may still be a viable dispute between the parties on appeal." The Court must consider whether it is "prudent" to upset the settlement. *Id.* To determine whether a bankruptcy appeal is moot, the Court examines three primary factors: "(i) whether a stay has been obtained, (ii) whether the [settlement] has been 'substantially consummated,' and (iii) whether the relief requested would affect ... rights of parties not before the court ...." *Id.*
>
> In this case, Appellants neither requested nor obtained a stay of the Bankruptcy Court's orders. Appellants did not request a stay in their Objections or during the evidentiary hearing. The settlement has been fully consummated--the property has been sold, the proceeds have been distributed . . .

*Id.,* at *2.

The factors set forth in *Supplement Spot* readily apply to this case. It is without question that Cornerstone failed to request a stay of the Order, transactions contemplated by the settlement and the abandonment have been "substantially consummated", and numerous third parties have acted in reliance on the Order. There has been a closing and the estate has abandoned its interest in property based on the Order.

Finally, reversing the Order would significantly affect the rights of parties not before the Court. Toyota, the Walser entities, creditors of the Hecker entities, the Trustee and many others have altered their economic stakes because of the Order. Walser obtained financing for the purchase and reopened a new Toyota dealership under a new Toyota franchise. Walser reopened for business the day after Thanksgiving and re-employed former employees of the Dealership who had been unemployed. The estate abandoned its interest in Jacob Holdings of Baxter, LLC and Jacob Properties of Minnesota, LLC, and settled its claims against TMCC. To unwind the transactions is impossible. Cornerstone requests relief which the Court cannot provide even if it were so inclined, and accordingly, Cornerstone's appeal is moot and should be dismissed.

## CONCLUSION

The Bankruptcy Court did not abuse its discretion in approving the Settlement Agreement between the Trustee, Brainerd Imports, LLC, Jacob Holdings of Baxter, LLC and Toyota Motor Credit Corporation, and that Order must be affirmed.

For the above reasons, the Appellee, Randall L. Seaver, Trustee, respectfully requests that the District Court affirm the Bankruptcy Court's Order approving the Settlement Agreement.

**LEONARD, O'BRIEN, SPENCER,
GALE & SAYRE, LTD.**

s/ Andrea M. Hauser

Dated:  January 19, 2010          By: _____
    Matthew R. Burton, #210018
    Andrea M. Hauser, #207469
    100 South Fifth Street
    Suite 2500
    Minneapolis, MN  55402
    (612) 332-1030
Attorneys for Randall L. Seaver, Trustee
and Appellee

415278

**ADDENDUM**

Nov. 25, 2009 Order of the Bankruptcy Court

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Dennis E. Hecker,

        Debtor.

BKY No. 09-50779
Chapter 7

## ORDER

This case is before the court on the motion of the trustee for approval of a settlement agreement.

Based on the motion and the file,

IT IS ORDERED:

1.      The trustee's motion for expedited relief is granted.

2.      The trustee's settlement with Brainerd Imports LLC, Jacob Holdings of Baxter LLC, and Toyota Motor Credit Corporation is approved.

3.      The trustee is authorized to execute and deliver, on behalf of the sellers, the Asset Purchase Agreement and Real Estate Purchase Agreement, and all documents and instruments contemplated by the Asset Purchase Agreement and Real Estate Purchase Agreement contemplated by the Settlement Agreement (and attached as part of Exhibit A to the verified notice of hearing and motion), or otherwise necessary to effectuate the transactions contemplated under the Settlement Agreement.  Execution of the instruments by the trustee in his capacity as trustee shall be sufficient to convey title to the interest so conveyed.

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on 11/25/2009
Lori Vosejpka, Clerk, by LMH



EXHIBIT

_____

4.     The trustee's settlement with TMCC as to the estate's preference claims is approved.

5.     The trustee's requested abandonment of the bankruptcy estate's interest in JHB and Jacob Properties of Minnesota LLC is approved effective after the closing of the transactions contemplated by the settlement agreement approved by this order with the abandonment retroactive to the commencement of the case, it being understood, however, that nothing contained in this paragraph 5, including the abandonment authorized hereunder, shall effect the validity of any instrument of conveyance to be executed by the trustee in connection with the proposed sale and consent to termination authorized under this order.

6.     This order is binding upon the debtor, all creditors of the debtor and parties in interest in the case, and inures to the benefit of the trustee and the buyer and all applicable successors and assigns, and Toyota Motor Sales, U.S.A., Inc.

7.     The trustee's consent to Toyota Motor Sales, U.S.A., Inc. terminating the Toyota Dealer Agreement with Brainerd Imports LLC, if the transactions contemplated herein are not closed by November 30, 2009, approved.

8.     Notwithstanding Fed. R. Bankr. P. 6004(h), this order is effective immediately.

Dated: November 25, 2009

/e/ Robert J. Kressel
_____
Robert J. Kressel
United States Bankruptcy Judge